IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL EUGENE LONDON,

    Petitioner,               No. CIV-S-03-00175 RRB KJM P

    vs.

A.A. LAMARQUE,

    Respondent.            FINDINGS AND RECOMMENDATIONS

        Petitioner is a state prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner was convicted in the Superior Court of Yuba County of: (1) being a felon in possession of a firearm, and (2) being a felon in possession of ammunition.  Petitioner currently is serving a sentence of thirty-years-to-life in the California Department of Corrections.  Petitioner challenges his convictions on jury instructional grounds.

I. Background

        Petitioner was found guilty after a jury trial.  After sentencing, petitioner appealed his convictions to the California Court of Appeal.  The Court of Appeal's summary of the facts underlying petitioner's conviction, which follows, is consistent with this court's reading of the record.

/////

>At approximately 8:45 p.m. on August 6, 1999, Sheriff's Lieutenant Alan Long and Reserve Deputy Robert Hess were dispatched to the Vinboy Trailer Park to arrest defendant on an outstanding felony arrest warrant. On their way to the trailer park, the officers were advised defendant's truck had been seen leaving the trailer park, heading down Third Avenue. Between 9:00 p.m. and 9:15 p.m., the officers located the truck on Third Avenue, recognized the driver as defendant, and parked behind the truck.
>
>The officers got out of their marked patrol car as defendant got out of his truck, leaving his hands inside the truck. As defendant appeared to be doing something with his hands inside the truck and the officers could not see his hands, they drew their guns and ordered defendant to show his hands. Defendant did not comply. The officers repeatedly directed defendant to take his hands out of the truck, to no avail. Defendant repeatedly asserted he had not done anything, and the officers then advised him they had a felony warrant for his arrest.
>
>As the officers moved toward defendant, defendant began to back away from them and then ran down Third Avenue. Defendant ignored their demands to "stop." After a chase, defendant was apprehended. Deputy Hess conducted a pat-down search and found 13 live .22-caliber rifle shells in defendant's pants pocket.
>
>An inventory search of defendant's truck revealed a handgun, 10 rounds of .22-caliber ammunition, and an empty box for .22-caliber ammunition. The handgun was in plain sight, on the driver's side floorboard about two inches from the door. It was loaded with seven live .22-caliber rounds and two expended casings. The ammunition was scattered across the seat.
>
>Defendant testified that he had recently bought the truck and picked it up that day, between 7:00 and 7:30 p.m. When he picked up the truck, he realized its headlights were not working, so he took it to his sister's house on Third Avenue, approximately half a mile away. On the way to his sister's house, he hit a speed bump and the gun came out from underneath the seat. After arriving at his sister's, he put the gun behind the seat and then he noticed the ammunition on the floorboard. To prevent his sister's children from picking up the ammunition, defendant put it in his pocket. He was going to get rid of the gun, but did not have time to decide exactly how, and he was probably going to throw the ammunition in the dumpster.

Answer, Ex. A at 2-3. The Court of Appeal affirmed petitioner's convictions on direct appeal. Id. at 8. Petitioner sought review of the Court of Appeal's decision in the California Supreme Court. Answer, Ex. B. Petitioner's request for review was denied without comment. Id. (last

page). The sole claim presented in this action was presented to the Court of Appeal and the California Supreme Court on direct appeal.

II. <u>Standards For Granting Habeas Corpus Relief</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA). <u>See</u> <u>Ramirez v. Castro</u>, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). <u>Lockyer</u>, 538 U.S. at 71 (overruling <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district

---

[1] In <u>Bell v. Jarvis</u>, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent <u>Bell</u> stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. <u>See</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>Ramirez</u>, 365 F.3d at 773-75.

1  courts to review state court decisions for error before determining whether relief is precluded by
2  § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief
3  by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).
4  　　　　　　The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are
5  different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we
> have done on a set of materially indistinguishable facts.  The court
> may grant relief under the "unreasonable application" clause if the
> state court correctly identifies the governing legal principle from
> our decisions but unreasonably applies it to the facts of the
> particular case.  The focus of the latter inquiry is on whether the
> state court's application of clearly established federal law is
> objectively unreasonable, and we stressed in Williams [v. Taylor,
> 529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

　　　　　　The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III. Arguments and Analysis

Petitioner argues that the trial court violated petitioner's right to due process under the Fourteenth Amendment by failing to instruct jurors on the defense of "transitory possession." Pet. at 3. Petitioner asserts the defense was a valid defense supported by his testimony, and without his requested instruction the jury had no choice but to convict him. Id., Ex. A at 6-14.

Petitioner's jury was instructed that in order to find petitioner guilty of being a felon in possession of a firearm, the jury had to find: (1) the defendant owned, had in his possession or had under his control a firearm, and (2) the defendant had knowledge of the presence of the firearm. RT 148:12-16. The jury also was informed:

> A violation of Section 12021(a)(1) is justified where all the following conditions are met: One, the person found the firearm; two, the person possessed the firearm no longer than was necessary to deliver or transport the firearm to a law enforcement agency for that agency's disposition; three, the firearm was transported or was being transported to a law enforcement agency and it was so transported or being transported after the person gave notice to the law enforcement agency that he was transporting the firearm to that agency for disposition.

RT 148:17-149:1. Substantially similar instructions were given regarding possession of ammunition. RT 150:5-21.

Petitioner requested, without success, that the jurors be instructed as follows:

> When an ex-felon comes into possession of a firearm without knowing that he has a firearm, and he later learns that he has a firearm, he does not automatically violate PC 12021(a) upon acquiring knowledge of the firearm. The ex-felon violates the law only if it is proved that he intentionally retained possession of the weapon after learning of its presence and did not take reasonable steps to immediately relinquish possession of it.

/////

/////

5

> Evidence has been presented that the defendant's possession of the <u>firearm and ammunition</u> was only temporary. Such temporary possession is not unlawful unless the prosecution has proven beyond a reasonable doubt that:
>
> 1. The possession was based on defendant's ownership or right to exercise control over the firearm and ammunition and
>
> 2. The firearm and ammunition were possessed for a purpose other than disposal, abandonment or concealment.

CT at 121-122 (emphasis in original). On appeal, petitioner argued that the trial court should have provided these instructions to petitioner's jury. The Court of Appeal addressed this claim as follows:

> This court has rejected the defense of transitory possession of a firearm by a felon. (*People v. Pepper* (1996) 41 Cal.App.4th 1029.) "As a matter of public policy, the Legislature has made it a crime for convicted felons to possess firearms. (§ 12021, subd. (a)(1).) The purpose of this law is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes. [Citation.] Due to the potential for death or great bodily injury from the improper use of firearms, public policy generally abhors even momentary possession of guns by convicted felons who, the legislature has found, are more likely to misuse them. Criminalizing the transitory possession of firearms by convicted felons in circumstances that do not satisfy the elements of self-defense, defense of others, or legal necessity is not likely to result in 'manifest injustice to admittedly innocent individuals.' [Citation.]" (*Id.* at pp. 1037-1038; see also *People v. Frazier* (1998) 63 Cal.App.4th 1307, 1312, [no instruction on transitory possession required where defendant possessed drugs for several hours].) *Pepper* is well-reasoned and correctly decided, and remains good law.
>
> We note that the California Supreme Court has recognized, in the context of narcotics cases, that the "'momentary possession' defense serves the salutary purpose and sound public policy of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms." (*People v. Martin* (2001) 25 Cal.4th 1180, 1191 (*Martin*), citing *People v. Hurtado* (1996) 47 Cal.App.4th 805, 814.) However, the Supreme Court has never applied this defense to a case of a felon in possession of a firearm.
>
> Nonetheless, even if we assume that the defense of transitory possession is available to a defendant alleged to be a felon in possession of a firearm or ammunition, such a defense would not

be available to this defendant. "[T]he defense of transitory possession devised in [*People v.*] *Mijares* [(1971) 6 Cal.3d 415] applies *only* to momentary or transitory possession of contraband for the purpose of disposal." (*Martin*, *supra*, 25 Cal.4th at p. 1191, emphasis added.) The defense arose in a very specific factual context, one "involving a fleeting, de minimis possession and a reflexive act of abandonment." (*Martin*, *supra*, at p. 1188, quoting *People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1452.) In carving out this defense, the Supreme Court "repeatedly focused on the fleeting and transitory nature of [the] possession." (*Martin*, *supra*, at p. 1191.)

The possession in this case was neither fleeting nor momentary. Defendant picked up the truck between 7:00 p.m. and 7:30 p.m. He drove approximately one-half mile to his sister's house. In the course of that journey, he discovered the gun and ammunition. Almost two hours later, between 9:00 p.m. and 9:15 p.m., the gun and ammunition remained in defendant's possession.

When the officers arrived at defendant's sister's house, defendant did not immediately advise them that the gun was in the truck. Defendant repeatedly refused to comply with the officers' commands and resisted arrest. Then he fled the scene. After a chase, defendant was arrested. He did not inform the officers about the gun or ammunition. After a pat-down search revealed the ammunition, he still did not advise the officers there was a gun in the truck.

There is no indication in this record that defendant "made any attempt, or took any physical action, to dispose of the [gun and ammunition], much less enlist the assistance of the officers in doing so. Indeed, there is nothing in the record from which to infer that defendant would have voluntarily relinquished possession of the [gun and ammunition] were it not for the search[es] conducted incident to his arrest. . . ." (*Martin*, *supra*, 25 Cal.4th at p. 1193.) On this record, defendant was not entitled to an instruction on momentary possession for the purpose of disposal. (See *ibid.*)

Furthermore, in *Martin*, the Supreme Court expressly limited the application of the *Mijares* transitory possession defense. The "expansion of the momentary possession defense to lengthier possession incidental to the defendant's intent to dispose of controlled substances effectively rewrites the statutory requirements of unlawful possession by introducing a new element of specific intent to retain."'" (*Martin*, *supra*, 25 Cal.4th at p. 1191 . . . [internal quotation omitted]).

/////

/////

/////

> The instructions requested by defendant in this case suffered precisely this infirmity. Both of the instructions would have introduced the element of "'specific intent to retain.' We are not authorized to so revise the Legislature's description of a criminal offense." (*People v. Hurtado*, *supra*, 47 Cal.App.4th at p. 814.) We find the trial court did not err in refusing defendant's requested instructions.

Answer, Ex. A at 5-8.

Petitioner has not met his burden of demonstrating that the California Court of Appeal decision was contrary to, or involved an unreasonable application of clearly established law as determined by the Supreme Court of the United States. The Court of Appeal indicated that California law did not provide for the defense suggested by petitioner and this court may not reexamine state-court determinations of state-law questions. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Petitioner identifies no clearly established federal law requiring that petitioner be allowed to present his "transitory possession" defense if such a defense is not recognized by California law.

Even if petitioner had met his burden, a violation of due process occurs if the failure to give a requested jury instruction deprives the defendant of a fair trial. See <u>Dunckhurst v. Deeds</u>, 859 F.2d 110, 114 (9th Cir. 1988). The California Court of Appeal noted that even if the "transitory possession" defense was available under California law, the evidence presented at trial was not consistent with "fleeting" or "momentary" possession of the gun and thus did not warrant the giving of the instruction requested by petitioner. In this respect, the Court of Appeal's decision is not based on an unreasonable factual determination of what constitutes "fleeting" or "momentary." Moreover, the trial court's giving of the instruction as to when a violation of the state's felon in possession statute is justified provided the jury with an alternative to conviction.

Accordingly, petitioner's claim is barred by 28 U.S.C. § 2254(a)(1).

/////

/////

IV. Conclusion

For the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 27, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] lond0175.157